**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

MAR 18 2025

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KARLA RUANO CORADO DE GUDIEL; et al., <br><br>　　　　　Petitioners, <br><br>　v. <br><br>PAMELA BONDI, Attorney General, <br><br>　　　　　Respondent. | No. 24-2159 <br><br> Agency Nos. <br> A220-988-892 <br> A220-988-893 <br> A220-988-894 <br><br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 3, 2025[**]
San Francisco, California

Before: WARDLAW, PAEZ, and BEA, Circuit Judges.

Petitioners Karla Ruano Corado de Gudiel ("Ruano Corado") and her two minor children, all natives and citizens of Guatemala, petition for review of a decision by the Board of Immigration Appeals ("BIA") affirming the denial by an immigration judge ("IJ") of their applications for asylum, withholding of removal,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

and protection under the Convention Against Torture ("CAT"). Exercising jurisdiction under 8 U.S.C. § 1252, we review for substantial evidence factual findings underlying the agency's eligibility determinations, *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022).[1] For the reasons set forth below, we deny the petition for review.[2]

1.      Petitioners fear persecution on account of their relationship with Ruano Corado's late husband, Robin Omar Gudiel Olmos ("Robin"), and have accordingly proposed two particular social groups ("PSG"): (1) the Gudiel Ruano family, and (2) the immediate family of Robin. Robin was a police officer who investigated narcotics crimes for approximately ten years in Guatemala. He was killed or committed suicide in November 2016. Prior to his death, Robin told Ruano Corado that some drug traffickers had threatened to kill him and his family. Neither Robin's family nor Ruano Corado reported Robin's death to the police.

Approximately nine months after Robin's death, starting in August 2017, Ruano Corado noticed "a certain black car" stopping "once every two months" by her house where she lived with her two children, appearing to be surveilling them. As the windows of the car "were tinted," Ruano Corado does not know who was

---

[1]      We refer to the IJ and the BIA collectively as "the agency." "Our review is limited to the BIA's decision except where the IJ's opinion is expressly adopted." *Plancarte Sauceda*, 23 F.4th at 831.
[2]      Because the parties are familiar with the facts, we recount them only as relevant to our decision.

inside, but she believes that the car was manned by drug traffickers who had threatened Robin because her "house was not around other houses" and because those drug traffickers had told Robin that "they knew where [Petitioners] lived." Ruano Corado did not report these incidents to the police. The suspected surveillance lasted for several years and continued after Ruano Corado left for the United States in August 2021. Petitioners fear that drug traffickers would kill them upon their return to Guatemala.

The agency concluded that the record lacked any concrete evidence that could support a nexus between the persecution Petitioners feared and the PSGs they proposed. We agree. It was simply Ruano Corado's speculation that the suspicious car was manned by drug traffickers surveilling her family for reasons relating to Robin. Ruano Corado does not know who, in fact, was in the car. Whoever was in the car never did anything to Petitioners or their family, and none of them ever received any threats since Robin passed away almost a decade ago. Therefore, substantial evidence supports the agency's conclusion that Petitioners have failed to establish the nexus necessary for their eligibility for asylum and withholding of removal.

2. To establish eligibility for CAT protection, Petitioners must show they are more likely than not to be tortured upon removal to Guatemala. *Plancarte Sauceda*, 23 F.4th at 834 (citing 8 C.F.R. § 1208.16(c)(2)). Again, nothing in the

24-2159

record besides Ruano Corado's speculation suggests that, upon return to Guatemala, Petitioners are likely to suffer any harm beyond what they experienced in the past, which did not constitute torture within the meaning of CAT. Therefore, substantial evidence supports the agency's conclusion that Petitioners have failed to establish their eligibility for CAT protection.

**PETITION FOR REVIEW DENIED.**[3]

---

[3] Petitioners' motion to stay removal (Dkt. No. 2) is **DENIED** as moot.